**William DIXON et al., Plaintiffs,**

v.

**Caspar WEINBERGER et al., Defendants.**

**No. 74–285.**

United States District Court, District of Columbia.

Dec. 23, 1975.

Benjamin W. Heineman, Jr. and Marilyn Rose, Center for Law and Social Policy, Washington, D. C. and Patricia M. Wald, Mental Health Law Project, Washington, D. C., for plaintiffs.

Peter R. Reilly, Asst. U. S. Atty., John H. Suda, Asst. Corp. Counsel, Washington, D. C., for defendants.

Armin U. Kuder, Alan L. Seifert, Washington, D. C., for *amicus curiae* Washington Psychiatric Society.

OPINION

AUBREY E. ROBINSON, Jr., District Judge.

This class action is brought by District of Columbia residents who are patients

confined pursuant to the 1964 Hospitalization of the Mentally Ill Act, 21 D.C. Code § 501 *et seq.* (hereafter referred to as the 1964 Act), in St. Elizabeths Hospital, a federally administered mental institution located in Southeast Washington. The defendants include the federal officials responsible for the administration of St. Elizabeths Hospital and District of Columbia officials responsible for implementation of the provisions of the 1964 Act. The case is currently before the Court on Plaintiffs' Motion for Partial Summary Judgment, the Federal Defendants' Motion for Summary Judgment and the District of Columbia Defendants' Opposition to Plaintiffs' Motion.

A wealth of material has been presented to the Court for assistance in resolving the motions currently pending. Although plaintiffs raise both statutory and constitutional grounds for the relief sought, the Court concludes that the statutory grounds are sufficient for resolution of this matter and this discussion is confined accordingly. The current motion is brought by the class of plaintiffs comprised of inpatients confined pursuant to the 1964 Act. In the estimation of the Hospital's clinical staff, approximately 43% of these inpatients currently require care and treatment in alternative facilities. Alternative facilities are defined as including but not limited to nursing homes, personal care homes, foster homes and half-way houses. Simply stated, the plaintiffs seek a judicial declaration that under the 1964 Act they have a right to treatment which includes placement in facilities outside St. Elizabeths Hospital where such placement is determined to be consistent with the rehabilitative purposes of the 1964 Act, that the federal and District of Columbia governments have a joint duty to provide for such treatment where appropriate, and that this duty has been breached because there are numerous individuals in the Hospital who have been determined in need of placement in alternative facilities but who have been denied due to a lack of same. Plaintiffs ask that this Court require defendants to initiate a plan for the development of alternative facilities and the placement of appropriate individuals therein.

Both governmental defendants oppose the requested relief. The District of Columbia defendants challenge the contention that the plaintiffs' right to treatment includes placement in alternative facilities, and, alternatively, argue that even if such a right exists, the responsibility for meeting the requirement is upon the federal government, and not the District of Columbia. The federal defendants on the other hand, deny that plaintiffs have met the burden of establishing their right to such treatment and vigorously dispute their responsibility for providing the facilities in which plaintiffs seek placement.

After extensive review of the pleadings and the record in this case, the lengthy legislative history of the 1964 Act, and the cases of this jurisdiction which have fleshed out the language of the statutory provisions in question, the Court concludes that plaintiffs' position is the correct one. In reaching this conclusion, the Court has considered two issues: Whether the right to treatment mandated by the Act includes the outpatient placement these plaintiffs seek, and if so, whether the federal or District governments, or both, are responsible for providing such facilities and effecting placement therein. The following discussion details these two considerations.

■ The first question is whether the 1964 Act mandates the type of treatment plaintiffs seek. The fundamental goal of the 1964 Act was to return the mentally ill through care and treatment to a full and productive life in the community as soon as possible, given the patients' conditions.[1] To implement this

---

1. *Covington v. Harris,* 136 U.S.App.D.C. 35, 419 F.2d 617, at 625 (1969); Hearings on the Constitutional Rights of the Mentally Ill Before the Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary, 87th Cong. 1st Sess. (1961); remarks of Senator Ervin, 110 Cong.Rec. 21346 (daily ed. Sept. 2, 1964).

broad goal, Congress established a statutory right "to medical and psychiatric care and treatment." 21 D.C.Code § 562. This language has been interpreted as requiring governmental authorities with respect to each patient to make a "bona fide" effort "to provide treatment which is adequate in light of present knowledge," and which must be "suited to his particular needs" as determined by a frequently evaluated, individually tailored, program. *Rouse v. Cameron*, 125 U.S. App.D.C. 366, 373 F.2d 451 at 456 (1966).

The purpose of the Act and the judicial recognition of its broad mandate are not in issue. Further the defendants do not dispute that St. Elizabeths Hospital staff are responsible for making care and treatment decisions regarding patients on the Hospital's rolls and for decisions that determine status as inpatients or outpatients.[2] Nor do they dispute that the Hospital staff has determined that plaintiffs' treatment needs include placement outside the Hospital. Yet defendants construe the above cited statutory language and the cases of this jurisdiction to conclude that plaintiffs are not entitled to the treatment sought by this action.

The District of Columbia defendants argue that 21 D.C.Code 545(b) which requires judicial consideration of any "alternative course of treatment which the court believes will be in the best interests of the person or of the public" should be applied only at the commitment stage (as the statutory scheme indicates) and not expanded to the treatment stage. These defendants assert this position despite judicial determination that "[t]he principle of the least restrictive alternative is equally applicable to alternative dispositions within a mental hospital," *Covington v. Harris*, 419 F.2d 617, at 623 (1969), and despite a declaration that "deprivations of liberty solely because of dangers to the ill persons themselves should not go beyond what is necessary for their protection." *Lake v. Cameron*, 124 U.S.App.D.C. 264, 364 F.2d 657, at 660 (D.C.Cir.1966). These defendants construe these cases narrowly and contend that only persons criminally committed who seek removal from maximum security are entitled to considerations of "least restrictive alternatives."

The federal defendants take a rather different approach. They do not dispute the fact that least restrictive alternatives must be considered in making treatment choices. However, the defendants contend that plaintiffs have failed to meet their burden of establishing that placement in the alternative facilities sought by this action is a less restrictive environment than hospitalization at St. Elizabeths for these plaintiffs. This argument is based upon the allegation that the plaintiff class includes individuals whose serious medical needs makes placement in an alternative facility most difficult.[3]

The Court finds these arguments without merit. The District of Columbia defendants' position is totally unjustified in light of the statutory language and its legislative history as recognized in the case law. And the federal defendants' contention goes more to the allocation of responsibility in an individual case, and not to the question of whether the placement is required under the Act.

The extensive legislative history of the 1964 Act as recited by plaintiffs, reviewed by the Court and referred to at length in *Rouse, supra*, clearly indicates that the "medical and psychiatric care and treatment" mandated by the Act must be broadly construed. And the record before the Court in this case convincingly demonstrates that "suitable care and treatment in light of present knowledge" includes placement in alter-

---

2. St. Elizabeths Policy and Procedures Manual, SEH Inst. 3400.1 at 1–3.

3. Five of the named plaintiffs are confined to wheel chairs, two are diabetic, four are epileptic, three have problems with alcohol, one suffers from mental retardation and cerebral palsy, one has glaucoma and cerebral arteriosclerosis. Defendants' Motion for Summary Judgment at 11, footnote 13.

native facilities in numerous instances. Thus, under the statutory language as interpreted, these plaintiffs have a right to the treatment sought in this action where the Hospital has determined that such treatment is appropriate.

The underlying controversy in this case, however, arises from the statutory creation of a right to the best possible care and treatment for the mentally ill without the delineation of the responsibility for providing the full range of care and treatment mandated. The fact that Congress did fail to definitely assign responsibility makes this Court's decision a more difficult one. The statutory language clearly mandates a right to treatment for patients. And the legislative history is replete with discussions of the likelihood of placement in facilities less restrictive than a mental hospital where such is determined to be appropriate treatment. Yet a delineation of responsibility for patient needs during the course of a treatment program was only mentioned as a potential bottleneck due to the financial interrelationship between the Hospital and the District, and was deferred for study at a later time.[4]

The primary responsibility for exploring and providing alternative facilities at the commitment level is upon the District of Columbia, and other Courts have so held. *In re Johnson*, 103 Wash.Law. Rep. 505 (1975); *In re Melvin*, M.H.No. 48–74 (D.C.Sup.Ct.1975). A recent case from Superior Court of the District of Columbia has gone even further than earlier cases and recognized the propriety of placement in a less restrictive alternative facility during the course of treatment (i. e. after an initial confinement in the Hospital) and the duty of the District of Columbia to provide promptly for such placement despite the lack of staff and facilities or budgetary limits. *In re Johnson*, 103 Wash.Law.

Rep. 1913 (Nov. 10, 1975). It is beyond dispute that St. Elizabeths Hospital is responsible for providing suitable care and treatment for patients while confined in the Hospital.

Therefore, at the commitment stage and for those patients determined to be in need of only custodial care, completely independent from any care or treatment generated by St. Elizabeths, the primary responsibility is upon the District government to provide suitable alternative arrangements. But in this case the class of plaintiffs includes individuals who are in neither category and as to these persons, the responsibility cannot be the District's alone.

Although Congress failed to clearly define the responsibilities for providing the full range of treatment mandated by the Act, the Court infers the necessary Congressional intent that the responsibility be a joint one from the manner in which funds have been appropriated to St. Elizabeths for the treatment of these plaintiffs over the past years. The Hospital receives its financing from Congressional appropriations channeled through the National Institute of Mental Health. As a public facility in which individuals are confined pursuant to the 1964 Act, St. Elizabeths is responsible for providing adequate care and treatment for mentally ill patients who are on their rolls. More than 85% of the patient population are District of Columbia residents.[5] The cost of treating these individuals is approximately $53 per day; of this cost the District pays approximately $25 and the Hospital pays the balance.[6] Therefore, it is obvious that the Hospital receives significant sums for treating patients confined pursuant to the 1964 Act, and, to this extent the Hospital shares the responsibilities imposed by the Act to provide a full

4. S.Rep. No. 925, 88th Cong. 2nd Session (1964) at 28, 29 and 40, U.S.Code Cong. & Admin.News, p. 597.

5. Response of Defendant Robinson to Interrogatory # 189, Plaintiffs' First Interrogatories.

6. Affidavit of Dr. Luther Robinson, Attachment # 5; 1973 House Appropriations Hearings at 301, 308.

range of treatment as required in an individual case.

■ The practicalities of treatment further support the Court's conclusion that Congress intended the responsibility to be a joint one. As noted earlier, one of the primary goals of the 1964 Act was to provide suitable care and treatment directed to returning individuals to the community to the extent possible. The responsibility and involvement of the Hospital in working toward this goal does not abruptly cease as a patient slowly moves from restrictive confinement in the Hospital to the less restrictive atmosphere of an alternative facility, pursuant to a plan of *treatment* dictated by the Hospital staff. To determine otherwise would be to disregard the fact that "housing" (as the government puts it) is integrally related to "treatment" within the purposes of the 1964 Act, and has been determined to be such by the Hospital staff.[7]

■ Therefore, it is concluded from the statutory scheme, the legislative history, and the Congressional intent which can be inferred from the appropriations allocated to St. Elizabeths for the care and treatment of these plaintiffs over the years, that the duty to effect placement in alternative facilities where appropriate is a joint one. The Court makes this determination with a realization that the division of responsibility will vary in an individual case and that the Hospital's primary responsibility is for psychiatric care and treatment. But as an individual's need for such treatment decreases and need for mere custodial care increases, the Hospital's responsibilities will correspondingly decrease. Individuals who are determined to be solely custodial cases, without need for psychiatric care or treatment in the broadest sense and for whose care the Hospital receives no funds, are more properly the responsibility of the District of Columbia government.

The record before the Court indicates that there are many individuals currently confined in the Hospital who are desperately in need of care and treatment which the Hospital staff has determined includes placement in facilities outside St. Elizabeths Hospital. The record further reflects that the named plaintiffs, at the very least, are among the individuals who are still in need of psychiatric care despite their readiness for placement in alternative facilities. Thus as to these individuals and others like them, the duty to provide such treatment by placement in alternative facilities is a joint one.

Upon the foregoing, it is this 23 day of December, 1975,

Ordered that Plaintiffs Motion for Partial Summary Judgment be, and hereby is, granted; and it is further

Adjudged and decreed that the 1964 Hospitalization of the Mentally Ill Act requires that patients confined in St. Elizabeths Hospital pursuant to the 1964 Act receive suitable care and treatment under the least restrictive conditions as such conditions are required in an individual case consistent with the purposes of the Act; that the District of Columbia and the Federal Government defendants have a joint duty to provide such care and treatment where appropriate; that both defendants have violated the 1964 Act by failing to place plaintiffs and members of their class, who are inpatients at St. Elizabeths Hospital and who have been determined suitable for placement in alternative facilities in proper facilities that are less restrictive alternatives to the Hospital, as it is presently constituted, such alternatives including but not being limited to nursing homes, foster homes, personal care homes and half-way houses; and that, therefore, such failure is unlawful and invalid; and it is further

Ordered that, forty-five (45) days from the date of this Order, the defendants

---

7. The Hospital places patients in alternative facilities as part of the patient's treatment plans in order to reintegrate the patient into the community and to develop self-reliance and self-determination. Response of Defendant Robinson to Interrogatory # 90(a).

shall submit to the Court an outline of a plan which shall detail the manner in which and the timetable by which defendants will meet their duty to provide plaintiffs who are and who will be inpatients at the Hospital with care and treatment in suitable residential facilities under the least restrictive conditions consistent with the purpose of the 1964 Act; that the outline shall include but shall not be limited to:

(a) a statement of the number of inpatients confined at the Hospital pursuant to the 1964 Act who require alternative placement at the time the outline is submitted and the type of and reasons for alternative care required;

(b) a statement of the estimated number of inpatients who are or who will be confined pursuant to the 1964 Act who will need alternative placement in the next six months, twelve months and eighteen months, in addition to the patients identified in (a), and the type of alternative care required;

(c) a statement of the major problems inhibiting alternative placement of those plaintiffs who are or who will be inpatients at the Hospital confined pursuant to the 1964 Act on the date the outline is submitted;

(d) a statement of the tentative solutions to the problems inhibiting alternative placement which defendants will propose in the completed plan;

(e) a tentative statement of the standards that will govern the care and treatment and the conditions in the various types of alternative facilities to which the inpatients identified in (a) and (b) will be outplaced;

(f) a tentative statement of the procedures and personnel to be used in monitoring the care and treatment and conditions in the various types of alternative facilities to which the inpatients identified in (a) and (b) will be outplaced;

(g) a statement describing tentative changes in budgetary patterns and/or sources of funding for implementing the solutions and aspects of the treatment process identified in (d–f);

(h) a tentative timetable for implementing the solutions identified in (d);

(i) a statement of the respective roles to be played by the Federal and District of Columbia defendants in preparation of the plan, including specification of the type and number of personnel to be provided by each of the defendants;

(j) a tentative statement of the respective responsibilities of the Federal and District of Columbia defendants in implementing the plan, i. e. in providing suitable, least restrictive care and treatment in alternative facilities to the inpatient plaintiffs; and it is further

Ordered that, after submission of the outline by defendants, after any further submissions by plaintiffs, and after approval of the outline of the plan by the Court, defendants shall, four (4) months from the date of the Court's order approving the outline of the plan, submit a final plan; and it is further

Ordered that the Court shall retain jurisdiction over this action to consider appropriate measures to be taken for the implementation of the plan submitted.